**STATE of West Virginia, Plaintiff,**

**v.**

**Arch A. MOORE, Jr., et al., Defendants.**

**Civ. A. No. 2:90–0747.**

United States District Court,
S.D. West Virginia,
Charleston Division.

*July 20, 1995.*

---

Rebecca A. Baitty, Sarasota, FL, Darrell V. McGraw, Jr., Katherine A. Schultz, Office of Attorney General, Charleston, WV, Michael Goldsmith, Professor, Brigham Young University, J. Reuben Clark Law School, Provo, UT, for plaintiff.

James A. Varner, Catherine D. Munster, McNeer, Highland & McMunn, Clarksburg, WV, James B. Lees, Jr., Sharon M. Fedorochko, Hunt, Lees, Farrell & Kessler, Charleston, WV, for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on plaintiff's Motion for Partial Summary Judgment. Plaintiff State of West Virginia ("the State") contends that defendant Arch A. Moore, Jr. ("Moore") should be estopped from denying and relitigating certain facts established in Moore's 1990 guilty plea, the Rule 11 hearing on that plea, the appeal of his conviction, and his two actions under 28 U.S.C. § 2255 seeking to vacate the conviction. In particular, the State seeks an Order pursuant to Fed. R.Civ.P. 56(d) "specifying the facts that appear without substantial controversy." For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

On May 8, 1990, Moore, pursuant to a written plea agreement, pled guilty to a five-count indictment charging him with mail fraud in violation of 18 U.S.C. § 1341; extortion in violation of the Hobbs Act, 18 U.S.C. § 1951; two counts of filing false income tax returns in violation of 26 U.S.C. § 7206(1); and obstruction of justice in violation of 18 U.S.C. § 1503. No written statement of facts accompanied Moore's plea agreement, although at the Rule 11 hearing on the plea, Special Assistant U.S. Attorney John Campbell orally outlined the facts he would have proven had the case gone to trial. After this oral proffer, Moore agreed that the government's factual summary was "substantially correct." (Transcript of Rule 11 Hearing at 31).

On June 28, 1990, Moore moved to withdraw his guilty plea, and on July 9, 1990, Judge Walter E. Hoffman denied the motion. Moore appealed that ruling as well as his sentence. The Fourth Circuit affirmed the District Court with respect to both matters on April 23, 1991. *United States v. Moore,* 931 F.2d 245 (4th Cir.), *cert. denied,* 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). Moore later filed two petitions pursuant to 28 U.S.C. § 2255. Both were denied by the District Court, and both District Court rulings were affirmed by the Fourth Circuit. *United States v. Moore,* 993 F.2d 1541 (4th Cir.1993) (table), *cert. denied,* —— U.S. ——, 114 S.Ct. 391, 126 L.Ed.2d 340 (1993); *United States v. Moore,* 46 F.3d 1128 (4th Cir. 1995) (table).

On June 12, 1992, the State filed a 13–count amended complaint against Moore. The complaint includes five claims pursuant to 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Additionally, the State has brought claims for breach of contract, breach of fiduciary duty, actual fraud, constructive fraud, civil conspiracy, malfeasance, and unjust enrichment, in addition to a punitive damages claim.

On December 3, 1992, the State filed a motion for partial summary judgment, arguing that Moore should be estopped from denying and relitigating any of the factual assertions contained in the first two counts of the indictment to which he pled guilty. Based on the facts outlined in the indictment, the State argued that certain elements of its RICO claims were established as a matter of law. Judge Robert J. Staker denied the State's motion on May 26, 1993. He held that Moore was not estopped from relitigating the facts in the indictment. Instead, Judge Staker ruled that "collateral estoppel will apply only to issues which were necessary to establish the essential elements of the charges encompassed by the *plea agreement.*" (Opinion of Judge Staker at 3).

The State has now filed a second motion for partial summary judgment, arguing that Moore, by virtue of collateral estoppel and judicial estoppel, is precluded from contesting his guilt of the crimes charged in the indictment, the facts outlined by the government at his plea hearing, and the findings made by the Court in ruling on his petitions pursuant to 28 U.S.C. § 2255. To the extent that the State asks this Court to reconsider Judge Staker's initial ruling, the motion is denied. Nevertheless, because the state raises some new issues, and because more facts have come to light since Judge Staker ruled on the State's first motion, some clarification is necessary.

## ANALYSIS

■ The State does not ask for judgment on any of its claims. However, under Fed. R.Civ.P. 56(d), the Court may specify that certain facts are deemed established. According to the State, Moore should be estopped from disputing the following: the facts necessary to prove the essential elements of each crime to which Moore pled guilty; the factual basis for his plea; and judicial findings made in rulings on his direct appeal and habeas petitions. Moore concedes only that he is estopped from relitigating the facts necessary to prove the essential elements of the crimes to which he pled guilty. Finding no reason to depart from Judge Staker's prior ruling, the Court holds that Moore may not relitigate any facts necessary to establish each element of the crimes for which he has been convicted. Any facts which go beyond this minimum threshold, whether they were alleged at the plea hearing or set forth by the Court in ruling on Moore's post-conviction requests for relief, are not clearly established at this point in the proceedings. Additionally, the Court rejects the State's contention that judicial estoppel is appropriate in this case.

### A. Moore's Rule 11 Plea Hearing

The State argues that Moore should be precluded from contradicting the facts outlined by Special United States Attorney John Campbell during Moore's Rule 11 plea hearing. In *United States v. Wight,* 839 F.2d 193 (4th Cir.1987), the Fourth Circuit set forth the manner in which collateral estoppel can be applied to prior criminal proceedings, including a guilty plea. *Wight* was a civil case involving a former United States government official who had pled guilty to receiving money for acts other than those within the scope of his official duties. The criminal information to which Wight pled guilty charged him with receiving more than $70,107 as a result of his illegal acts. After Wight's plea, the government brought a civil action against him seeking damages in the amount of the illegal payments Wight had received. The district court granted partial summary judgment for $70,107, the amount listed in the criminal information.

The Fourth Circuit reversed the district court, holding that "a defendant is precluded from retrying issues *necessary* to his plea agreement in a later civil suit." *Id.* at 196 (citing *United States v. DiBona,* 614 F.Supp. 40, 41–43 (E.D.Pa.1984) (emphasis added). Since the criminal statute to which Wight pled guilty included no jurisdictional amount, the $70,107 was not necessary to Wight's plea agreement. Applying the rationale set forth in *Wight* to this case, Moore is only estopped from relitigating the facts necessary to prove each element of the crimes to which he pled guilty. Any facts set forth at the Rule 11 plea hearing which were not essential to Moore's conviction have not been conclusively established.

The State tries, unsuccessfully, to distinguish *Wight* from the case at hand. According to the State, the Court's ruling in *Wight* was based on factors not relevant here—the plea agreement in *Wight* did not specify any amount of money; the government admitted that the $70,107 figure was not precise; Wight had been disadvantaged in challenging the figure during his criminal proceeding because his records had been seized; and the figure did not include offsets for travel and meals. However, the *Wight* opinion makes clear that "the *critical* issue in this case is whether or not the amount of damages was a *necessary and essential* element of the plea agreement that Wight entered." *Id.* at 196. (emphasis added).

The State cites a number of cases from other circuits to support its argument that estoppel applies to the facts outlined by the U.S. Attorney at Moore's rule 11 plea hearing. These cases are inapplicable. *Wight* is the law in the Fourth Circuit, and this Court is bound by its holding.

■ Additionally, the Court's decision is supported, though not required, by the "law of the case" doctrine. According to that doctrine, "where there is an unreversed decision of a question of law or fact during the course of litigation, such decision settles that question for all subsequent stages of the suit." *Wilson v. Ohio River Co.,* 236 F.Supp. 96, 98 (S.D.W.Va.1964). This Court is not bound by Judge Staker's ruling because it was an interlocutory order. *Perez–Ruiz v.*

*Crespo–Guillen,* 25 F.3d 40, 42 (1st Cir.1994). However, the law of the case is "a rule of practice," *Corporacion de Mercadeo Agricola v. Mellon Bank International,* 608 F.2d 43, 48 (2d Cir.1979), and should only be departed from "in the sound discretion of the district court." *Id.* Seeing no reason to depart from Judge Staker's interpretation of Fourth Circuit case law on this issue, the Court holds that Moore is not estopped from disputing all of the facts set forth by the U.S Attorney at his plea hearing. He is precluded only from contesting the facts necessary to prove each element of the crimes to which he pled guilty.

*B. The § 2255 Petitions*

 The Court further rejects the State's contention that Moore should be precluded from relitigating issues that were resolved against him in his § 2255 proceedings. Where a plaintiff seeks to estop a defendant from disputing issues that the defendant previously litigated and lost to another plaintiff, collateral estoppel cannot be applied if it would be unfair to the defendant. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In determining whether such offensive use of collateral estoppel is appropriate, a trial court must consider the following factors:

(1) whether the plaintiff in the present action could have joined in the previous lawsuit;

(2) whether the defendant had every incentive to litigate the prior suit fully and vigorously;

(3) whether the judgment in the earlier action was inconsistent with any previous decision; and

(4) whether the present action provides the defendant with procedural opportunities that were unavailable in the prior lawsuit and that might be likely to cause a different result.

*Parklane Hosiery,* 439 U.S. at 330–32, 99 S.Ct. at 651–52; *C.B. Marchant Co. v. Eastern Foods,* 756 F.2d 317, 319 (4th Cir.1985).

 The Court finds that it would be unfair to preclude Moore from disputing issues that he previously litigated and lost in his § 2255 proceedings. In general, preclusive effect should not be given to a prior determination where the party against whom estoppel is sought had a heavier burden of proof in the previous action. *See, e.g., Whelan v. Abell,* 953 F.2d 663, 668 (D.C.Cir.1992) (citation omitted). In his § 2255 proceedings, Moore bore the burden of proving by a preponderance of the evidence that his conviction and sentence should be set aside. Here, however, Moore bears no burden at all, since it is the State that must prove its claims by a preponderance. Although Moore did not prevail in his § 2255 actions, the shifting of the burden of proof in this case could certainly cause a different result from those in earlier proceedings. Thus, Moore should not be estopped from relitigating issues that were resolved against him on his habeas claims.[1]

*C. Judicial Estoppel*

 In proper circumstances, a party may "be precluded … from adopting a legal position in conflict with one earlier taken in the same or related litigation." *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982). The State contends that this doctrine of judicial estoppel provides an independent basis for preventing Moore from relitigating matters resolved against him during his various criminal and appellate proceedings. Application of judicial estoppel is generally based upon "a universal reluctance to permit litigants to 'play fast and loose' with courts of justice according to the vicissitudes of self interest." *Guinness PLC v. Ward,* 955 F.2d 875, 899 (4th Cir.1992) (quoting *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1178 (D.S.C.1974). The Fourth Circuit has noted that the doctrine is to be applied "with caution." *Zurich.,* 667 F.2d at 1167.

Moore contends that this civil suit and his earlier criminal proceedings are not "the

---

**1.** Although Moore did not have a right to trial by jury in his § 2255 proceedings, he does have a right to a jury trial in this case. Moore therefore contends that application of offensive collateral estoppel in this action would violate his Seventh Amendment right to trial by jury. The Supreme Court, however, has explicitly rejected this argument. *Parklane Hosiery,* 439 U.S. at 332 n. 19, 99 S.Ct. at 652 n. 19 ("the presence or absence of a jury as factfinder is basically neutral").

same or related litigation." The State responds by citing two cases for the proposition that a defendant in a civil suit may be judicially estopped from contradicting admissions he made during the course of pleading guilty to a criminal charge. However, the State has misconstrued the holding in each case. In *Appley v. West*, 929 F.2d 1176, 1178 (7th Cir.1991), the Court found no need to reach the judicial estoppel argument because it had not been raised before the district court. *Id.* at 1180. In *American Association of Medical Colleges v. Mikaelian*, 230 U.S.P.Q. 10, 1986 WL 332 (E.D.Pa.1986), the Court based its holding on collateral estoppel, not judicial estoppel. *Id.* at 22. Additionally, the defendant in *Mikaelian* filed no evidentiary material opposing the plaintiff's motion for summary judgment. Here, Moore has filed an affidavit disputing many of the State's factual allegations.

Moreover, the policy considerations raised with respect to the preclusive effect of Moore's § 2255 petitions are applicable to the doctrine of judicial estoppel as well. Allowing the State to use judicial estoppel "offensively" in this case would be unfair to Moore. Moore is the defendant in this civil suit and the state has the burden of proving its case by a preponderance of the evidence. In prior proceedings (with the exception of the Rule 11 hearing on his guilty plea), Moore carried the burden of proof. Because Moore had a heavier burden in those prior actions, judicial estoppel would be just as unfair as collateral estoppel. With respect to the guilty plea, Moore only admitted to committing acts necessary to prove each element of the crimes charged in the indictment. Judicial estoppel cannot expand the scope of those admissions.

### D. The Facts Established by Virtue of the Plea

In his response to the State's motion, Moore has filed an affidavit in which he claims to admit "those facts necessary to establish the essential elements of the charges encompassed by the plea agreement." (Def's. Brief at 23). Moore's version of the facts falls far short of the mark on each count.

### 1. Mail Fraud

At the time Moore committed mail fraud in violation of 18 U.S.C. § 1341, the statute provided in relevant part as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, ... for the purpose of executing such scheme or artifice or attempting so to do, ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be delivered by the Postal Service ... shall be fined not more than $1,000,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1341. To convict a defendant of mail fraud, the government "must prove two essential elements—(1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *United States v. Murr*, 681 F.2d 246, 248 (4th Cir.), *cert. denied*, 459 U.S. 973, 103 S.Ct. 307, 74 L.Ed.2d 286 (1982). Additionally, the scheme must be intended to deprive an individual of money or property. *McNally v. United States*, 483 U.S. 350, 356–59, 107 S.Ct. 2875, 2879–81, 97 L.Ed.2d 292 (1987)

Judge Staker, in ruling on the State's first motion for partial summary judgment, relied on *United States v. Mandel*, 591 F.2d 1347, 1360 (4th Cir.), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980), to determine that "any scheme contrary to public policy that involves deception can be prosecuted under the mail fraud statute if the mails are used in the execution of the scheme." (May 26, 1993 Order at 4). However, the Fourth Circuit ultimately vacated Mandel's conviction in a later opinion, holding that a conviction under the mail fraud statute "requires a finding that the scheme *defrauded* or *intended to defraud* someone of money or property." *U.S. v. Mandel* (*Mandel II* ), 862 F.2d 1067, 1072 (4th Cir.1988) (citing *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987)) (emphasis in original). Both *McNally* and *Mandel II* were decided before Moore pled guilty to mail fraud. Thus, Moore's guilty

plea establishes that he took part in a scheme to defraud someone of money or property and the scheme involved the use of the mails.

In his affidavit, Moore admits that he "received and expended an illegal cash campaign contribution from a D'Annunzio family member as part of an effort ... to finance transportation of voters to the polls in order to assure voter turn-out." (Moore Aff. at 3). Moore also admits that he did not report these contributions and expenses on his campaign financial statement which was mailed to the office of the West Virginia Secretary of State on December 6, 1984. According to Moore, he paid campaign organizers in cash and failed to report any payments because "some of the campaign organizers ... did not want the general public to know they were receiving monies from a Republican." *Id.*

The conduct which Moore describes simply does not constitute mail fraud as defined at the time he pled guilty to the offense. Moore's self-serving explanation is inconsistent with a scheme to deprive someone of money or property. Additionally, he has failed to admit an intent to defraud. Both of these facts have been established conclusively by Moore's guilty plea, and he is precluded from denying them.

#### 2. Hobbs Act Violation

■ Moore also pled guilty to extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. The statute provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by ... extortion" shall be guilty of an offense against the United States. 18 U.S.C. § 1951(a). To gain a conviction, the government must prove:

(1) that the defendant coerced the victim to part with property; (2) that the coercion occurred through the "wrongful use of actual or threatened force, violence or fear or under color of official right"; and (3) that

the coercion occurred in such a way as to affect adversely interstate commerce. *United States v. Buffey,* 899 F.2d 1402, 1403 (4th Cir.1990) (quoting *United States v. De Parias,* 805 F.2d 1447, 1450 (11th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1987)). Additionally, at the time Moore pled guilty, a public official could not be convicted of a Hobbs Act violation unless he knew that the money he received was not lawfully due and owing to him. *United States v. McCormick,* 896 F.2d 61 (4th Cir.1990) (quoting *United States v. Barber,* 668 F.2d 778, 783 (4th Cir.), *cert. denied,* 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982)), *rev'd,* 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991).[2]

Moore admits that he received money from Paul Kizer, but he denies knowing that the payment was for any unlawful purpose. In his affidavit, Moore explains that "[t]he Kizer payment was made by Kizer, in part, for my legal services, which I had provided before I became Governor, and I have been informed that he made the payment, in part, in his expectation of receiving my assistance to him as Governor." (Moore Aff. at 5).

The conduct which Moore has admitted does not rise to the level of a Hobbs Act violation. During trial, he will not be permitted to deny that he took money from someone for an unlawful purpose. The facts that Moore outlines in his affidavit would only constitute a Hobbs Act violation if knowledge and intent were not elements of the crime. Because "[t]he actual intent of the parties is the key determining factor," *McCormick,* 896 F.2d at 67, Moore is estopped from denying facts necessary to prove the intent element of a Hobbs Act violation.

#### 3. Filing False Tax Returns

■ Title 26, United States Code, section 7206(1) provides:

Any person who ... [w]illfully makes or subscribes any return, statement, or other document, which contains or is verified by

---

**2.** In considering the elements that the government must prove in order to obtain a Hobbs act conviction, this Court has relied on the Fourth Circuit's opinion in *McCormick* rather than the Supreme Court's. When Moore pled guilty, the Fourth Circuit's *McCormick* decision had not yet been reversed. Therefore, the Fourth Circuit's decision was controlling law at the time the plea was entered.

a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ... shall be guilty of a felony.

26 U.S.C. § 7206(1). Therefore, in order to prove that a defendant willfully filed a false tax return, the government must establish the following four elements:

(1) The defendant made and subscribed to a tax return;

(2) The return contained a written declaration that it was made under penalties of perjury;

(3) The defendant did not believe the return to be true and correct as to every material matter; and

(4) The defendant acted willfully.

*E.g., United States v. Owen,* 15 F.3d 1528, 1532 (10th Cir.1994).

Because Moore pled guilty to Counts Three and Four of the Indictment, he is estopped from disputing those facts that were necessary to establish the elements of those offenses. In his affidavit, Moore admits that he filed false federal income tax returns for the years 1984 and 1985. He states that his 1984 return failed to report a cash payment he received from a D'Annunzio family member during his 1984 gubernatorial campaign. (Moore Aff. at 7.) Additionally, Moore asserts that his 1985 tax return did not disclose a campaign contribution he received from Robert Gilliam to assist in payment of transition expenses incurred during the assumption of the Governor's office. (Moore Aff. at 8.)

Again, the facts that Moore admits are precluded from relitigation fail to establish two separate violations of section 7206(1). In general, political candidates need not disclose campaign contributions on their tax returns. Such payments become taxable income only when they are "diverted from the channel of campaign activities and used by a political candidate for any personal purpose." Rev. Rul. 71–449, 1971–2, C.B. 77. Thus, the tax returns that Moore filed for 1984 and 1985 could not have been "materially false" unless they failed to disclose contributions that were diverted from Moore's campaign activities for personal purposes. Moore's guilty plea to Counts Three and Four of the Indictment must establish that the campaign contributions omitted from Moore's 1984 and 1985 returns were diverted for personal purposes. Accordingly, in addition to the facts that Moore admits he is estopped from relitigating, Moore is precluded from contesting that these contributions were illegally diverted.

### 4. Obstruction of Justice

■ Title 18, United States Code, section 1503 states that any person who "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice" shall be guilty of an offense against the United States. 18 U.S.C. § 1503. To demonstrate a violation of section 1503, the government must prove that (1) there was a pending judicial proceeding; (2) the defendant had knowledge or notice of the pending proceeding; and (3) the defendant acted corruptly, that is with the intent to influence, obstruct, or impede that proceeding in its due administration of justice. *United States v. Grubb,* 11 F.3d 426, 437 (4th Cir.1993).

Moore acknowledges that, since he pled guilty to Count Five of the Indictment, he cannot deny or dispute those facts that were necessary to establish the elements of obstruction of justice. Moore admits that he made false statements to federal investigators in late 1989 and early 1990, knowing that a federal grand jury was investigating his conduct in office. In two sworn statements to government agents, Moore denied discussing the investigation with John Leaberry, his 1988 campaign finance chairman. Moore also denied meeting with Leaberry, even though he did meet with Leaberry on January 8, 1990. (Moore Aff. at 8).

■ Once again, Moore's admissions fall short of demonstrating the essential elements of obstruction of justice. The mere making of false statements to a government agent does not violate section 1503. It must also be established that "the false statements given, in some way, either obstructed or were intended to obstruct the due administration of justice." *Grubb,* 11 F.3d at 437. Thus,

Moore is not only precluded from relitigating the fact that he lied to federal investigators, but he is also estopped from denying that he attempted to obstruct justice through such actions.

In short, Moore will be precluded from denying all facts necessary to establish the elements of the crimes to which he pled guilty. All other factual questions will be resolved by the jury.

Let the Clerk send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.